UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

DEC 2 1 2000

U. S. DISTRICT COURT
EASTERN DISTRICT OE MO
ST. LOUIS

JACK H. BRAUNGARDT,                    )

      Plaintiff,                        )

vs.                                    )        Case No. 4:99CV1479 ERW

CITY OF FLINT HILL, MISSOURI,          )

      Defendant.                        )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant City of Flint Hill's ("Defendant" or "Flint Hill") Motion for Summary Judgment [document #20]. At the heart of this dispute between Plaintiff and Defendant is Plaintiff's refusal to connect to the public water supply available to residents of Defendant, and Defendant's refusal to allow Plaintiff to drill a well on his property.

## I.    <u>STATEMENT OF FACTS.</u>

Jack Braungardt ("Plaintiff") resides in Flint Hill. Flint Hill is a municipal corporation of the State of Missouri located within St. Charles County, and is organized as a fourth class city. Until 1993, there was no public water supply available to residents of Flint Hill, and no regulations by Flint Hill concerning the delivery of water services. Flint Hill has had regulated sewer services since the late 1980's. Plaintiff connected to the sewer system constructed by Flint Hill when it required its residents to connect because Plaintiff had sewer waste running in his ditch, posing a hazard to public health and safety.

Prior to 1993, water service was obtained by the residents of Flint Hill through private wells. When residents of Flint Hill, like Plaintiff, did not have a well on their own property, they



entered private "well agreements" with adjoining landowners to "hook up" to the adjoining

landowner's well. These agreements resulted in many residents utilizing one well. Plaintiff

entered into such an agreement with his neighbors, the Fraziers, as did four or five other neighbors,

all getting their water from the Fraziers' well.[1]

This all changed beginning in 1988 when the Flint Hill Board of Alderman voted to retain

George Butler Associates ("GBA") to serve as the City Engineers to help design the proposed

public water system. The Board retained GBA because of its prior experience in designing and

developing public water systems, including consulting on the water systems in Dardenee, Prairie,

Cottleville, Wentzville, and the City of O'Fallon. GBA provided extensive professional services to

Flint Hill concerning the design of the water system, and Flint Hill, together with GBA, explored

various options concerning the development of the water system. This included the possibility of

using grant applications to pay for the system. Both Flint Hill and GBA met with the Missouri

Department of Natural Resources concerning the water system, and public hearings were also held

by Flint Hill for its residents who were invited to discuss the construction and design of the

proposed water system. At least two surveys were conducted regarding the water system, including

one done in December 1992. All of the meetings held by the Board were open to the public, and all

citizens were given an opportunity to speak concerning the construction and design of the proposed

---

[1]This "well agreement" between Plaintiff and the Fraziers contained a clause providing for its termination upon the installation of public water in front of the lots. The agreement further provided that upon termination the parties agreed to obtain their water from the "public system." The agreement stated in this regard:

> When and if a water main is installed by a public water company or by a municipality in Mexico road in front of the lots, this contract shall terminated One-Hundred and Eighty (180) days thereafter; and the parties shall thereafter obtain their water thereafter from said water main . . . .

water system.  Although aware of the meetings, Plaintiff did not attend.  According to the Plaintiff, his neighbors kept him informed about the water system.

In 1992, the Board of Aldermen of Flint Hill discussed with the East Central Missouri Water and City Authority ("ECM") the possibility of ECM operating the public water supply system after it was constructed and completed by Flint Hill.  Missouri law required voter approval for such an arrangement.

The Board continued to discuss the implementation of the public water supply.  From the December 1992 survey, the Board had learned that Flint Hill residents felt that consideration should be given to those who had pre-existing, single family wells (used solely by one family) because they had borne the up-front costs associated with well construction.  The Board felt this would be a reasonable accommodation, inasmuch as, according to the Defendant, the health and safety concerns prompting the implementation of the water supply would not be compromised by the continued existence and use of single family wells.[2]  Therefore, the Board determined to exempt from the mandatory use of the water system any properties with pre-existing wells used by a single family.[3]

Prior to adopting Ordinance No. 76, the Board of Aldermen of Flint Hill consulted with and

---

[2]Flint Hill has alleged that this accommodation still eliminated the multiple well hook-ups which could cause health and safety problems for multiple residents if wells became contaminated, and since all future water users would be required to hook-up to the public water supply system.

[3]Plaintiff disputes Defendant's reference to the health and safety concerns underlying the implementation of the water supply system because he alleges that health and safety concerns were not preeminent in the minds of the Board when they drafted Ordinance No. 76 which required certain residents to hook-up to the public water system within a certain amount of time.  Instead, Plaintiff claims that the real reason for the mandatory hook-up was economic inasmuch as Flint Hill could not afford to implement the public water system if enough people did not hook-up to it.

obtained input from ECM, GBA, and Charles Niedner, Flint Hill's attorney.  Ordinance No. 76 was

based upon input from all three of these entities and individuals, as well as input from Flint Hill

residents, and was patterned after other ordinances in rural cities similar to Flint Hill.  On July 20,

1993, the Board of Aldermen for Flint Hill unanimously adopted Ordinance No. 76, which

provides, in pertinent part:

> Section No. 1.  That after construction of any public water system within the City of
> Flint Hill, the following classes of persons, companies, and entities shall be required
> to tap on to such public water system if any part of their property line lies within
> 100 feet of such public water system.
>
> >    1.  Commercial establishments.
> >    2.  Rental properties.
> >    3.  Multi family properties.
> >    4.  Any residence which shares a well with another residence or water user.
> >    5.  Any residence which is served by a well which well is constructed or
> >        put in use after construction of said public water system.
>
> Section No. 2.  This ordinance does not require a single family residence which is
> the sole user of a single well on its property to tap on to a public water system in the
> City of Flint Hill, if said well was constructed and put in use before construction of
> said public water system . . . .

The reasons given by Flint Hill for the adoption of Ordinance No. 76 in Defendant's Statement of

Undisputed Facts are

> concerns for public health safety and welfare; because they had received reports that
> various wells had been contaminated with e-coli; reports that some wells were not
> being tested; reports that other wells were not being properly maintained; and that
> all of this was being compounded by many cases of multiple family residences
> being connected on a single well.  The Board of Aldermen for the City believed that
> multi-family residences hooked up to a single well had to be eliminated due to the
> potential of the contamination of a single well causing health and safety concerns to
> multiple family residences being served by a single well.

Defendant's Statement of Undisputed Facts at 5, ¶ 12.[4]

Ordinance No. 76 contains a 100 foot boundary limitation.  The Board of Aldermen were advised by GBA and ECM that it was simply too expensive to design a water system which would serve the entire city.  Based on this advice, the Board adopted GBA's recommendation of the 100 foot boundary limitation because it was thought that (1) it was feasible given the number of

_____

[4]Plaintiff disputes this statement of fact, although it is not abundantly clear from Plaintiff's Response to Defendant's Statement of Undisputed Facts why that statement is disputed.  Plaintiff's Response consists of admissions to all statements except 9, 12, 15, and 18.  Plaintiff denies those four statements of facts with the same statement:

> Plaintiff denies the statements in paragraph 9 (concerning the reasons for the ordinances in question) in that Defendant has admitted that the rationale behind the drafting of ordinances in question was for economic reasons not health and safety. . . . Ordinance No. 76 also allows residents the right to have a well if such well was constructed before the installation of the public water system – negating Defendant's health and safety arguments. . . .  There is also evidence that the health and safety concerns centered on cisterns in town (not present in this case) and wells being used by multiple residences (not present in this case).

See Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶¶ 9, 12, 15 and 18.  The Court will assume that it is Plaintiff's intention to dispute Paragraphs 9, 12, 15 and 18, although it is only clear from the Response that Plaintiff disputes Paragraph 9.  Under Local Rule 7-4.01(E),

> Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists.  Those matters in dispute shall be set forth with specific references to portions of the record, were available, upon which the opposing party relies.  The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts.  *All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.*

(emphasis added).  This rule clearly requires a party opposing a motion for summary judgment to specifically controvert statements of material fact or those statements shall be deemed admitted.  Plaintiff clearly objects to the characterization by Defendant that the reasons underlying Ordinance No. 76 were public health and safety.  Plaintiff states that the real reasons underlying the mandatory nature of Ordinance No. 76 were economic, not health and safety.  However, because Plaintiff only states an objection to Paragraph 9, and does not explicitly object to Paragraphs 12, 15, and 18, those three paragraphs (12, 15, and 18) are deemed admitted.

residents which would be served in the City versus costs considerations, and (2) a like boundary

limitation was in Flint Hill's pre-existing sewer regulation. Ordinance No. 76 also contained the

aforementioned exemption for single family residences who were the sole users of pre-existing

wells put in use prior to the construction of the water supply system, the number of which was

though to be relatively small. Furthermore, the Ordinance required all residents of the City within

100 feet of the public water system to connect to the public water system when it was completed,

ensuring both a healthy water supply for most Flint Hill residents and sufficient money to construct

and operate the system.[5]

Pursuant to Mo. Rev. Stat. § 88.773, the voters of Flint Hill approved a contract with ECM

under which ECM would deliver and distribute water to the City for a period of 20 years

commencing on November 2, 1993. Construction on the water system began shortly thereafter

with Flint Hill financing the construction costs with money borrowed from the State of Missouri.

On April 19, 1995, the Board of Aldermen adopted Ordinance No. 93 which stated, in

pertinent part:

> Section 1: That all required connections as described in Ordinance No. 76 be
> required to connect to the Flint Hill water system within 90 days after the Flint Hill
> water system has been constructed and accepted by the City of Flint Hill, Missouri,
> and the East Central Missouri Water and Sewer Authority.
>
> Section 2: That no customer will be allowed to connect to the Flint Hill water
> system if a private well is connected to the house plumbing system.
> Interconnections with a private source and the public system is strictly prohibited.

Flint Hill completed construction of the public water system on December 20, 1995, and the

system was thereafter approved by the Missouri Department of Natural Resources. The City Clerk

---

[5]Again, Plaintiff appears to dispute any reference by Flint Hill to health and safety reasons
underlying the enactment of Ordinance No. 76.

notified residents by letter dated January 2, 1996 of the water system's completion and requested

voluntary compliance within the 90 day hook-up date found in Ordinance No. 93. This letter was

mailed to the Plaintiff. Plaintiff, the Fraziers, and several other city residents did not comply with

the 90 day deadline. The Board of Aldermen considered the issue of non-compliance at several

Board meetings and also reviewed the issue with the City Attorney. The Board then directed the

City Clerk to write a letter to all people who were not in compliance with both Ordinances

encouraging them to comply. Plaintiff and the Fraziers were sent that letter on October 30, 1996.

Even prior to that letter, however, the City Attorney wrote a letter on September 15, 1996

addressed to Plaintiff encouraging him to comply.

At some point after these letters were sent, Mr. Frazier disconnected Plaintiff from his well

connection in reliance on the contract language of the "well agreement." Plaintiff was left without

a source of water since he has no well on his land. Plaintiff's lot is within 100 feet of the City's

water system. From the time Ordinance No. 76 was adopted until December 20, 1995 (the date of

the completion of the water system), Plaintiff took no action to have a well drilled on his property.

Only after refusing to hook-up to the public water system, and after Mr. Frazier disconnected

Plaintiff from his water supply, did Plaintiff attempt on two occasions to have a private well dug on

his property. Plaintiff disputes the quality of the public water, and prefers to have well water. On

both occasions, the well drilling companies ceased operations on Plaintiff's property when Flint

Hill informed them about Ordinance No. 76 or, on the second occasion, when a stop order was

issued. Plaintiff was not charged any money on either occasion.

Flint Hill claims it has not knowingly permitted any violations of either Ordinance No. 76

or Ordinance No. 93 to exist.[6]  Plaintiff is the only resident of Flint Hill who has failed to hook-up to the public water system as required by the Ordinances.[7]

## II.   SUMMARY JUDGMENT STANDARDS.

The standards applicable to summary judgment motions are well settled.  Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'"  Id. At 327 (quoting Fed. R. Civ. P. 1).

In order to obtain summary judgment, the moving party must demonstrate "an absence of evidence to support the non-moving party's case."  Celotex, 477 U.S. at 325.  Once the moving party carries this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party may not rest on allegations or denials in the pleadings, but must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  Id. at 587 (quoting Fed .R .Civ .P. 56(3)).

_____

[6]Plaintiff admits this.

[7]Plaintiff admits this.  Although Plaintiff stated in his Answers to Interrogatories that Mr. Elroy Rufkahr and the Carters were allowed to drill wells on their property after the deadline imposed under the Ordinances, Plaintiff admits for purposes of summary judgment that there have been no knowing violations of the Ordinances allowed by Flint Hill, and that he is the only resident known to Flint Hill who has refused compliance with the Ordinances.

In analyzing summary judgment motions, the Court is required to view the facts in a light most favorable to the non-moving party, and must give the non-moving party the benefit of any inferences that can logically be drawn from those facts. Matsushita, 475 U.S. at 587; Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). Moreover, this Court is required to resolve all conflicts in favor of the non-moving party. Robert Johnson Grain Co. v. Chemical Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). The trial court may not consider the credibility of the witnesses or the weight of the evidence. White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992).

## III.   ANALYSIS.

### A.   INTRODUCTION.

Plaintiff claims that Ordinance No. 76, on its face and as applied, violated Plaintiff's substantive due process rights inasmuch as the Ordinance prevented him from drilling a well on his land and connecting his house to the well for his water supply. Plaintiff also claims that his rights under the equal protection clause were violated because Ordinance No. 76 effected "spot" zoning in that he was prevented from drilling a well on his property while others, similarly situated, were not so prohibited. Plaintiff further claims that the enactment and application of Ordinance No. 76 effected a partial regulatory taking of his property in violation of the Fifth Amendment. Finally, Plaintiff has requested punitive damages in this case, a request Defendant claims is improper under applicable United States Supreme Court precedent.

The only fact that appears to be in dispute is whether Ordinance No. 76 was adopted for reasons concerning public health and safety or rather for economic reasons as Plaintiff believes. Plaintiff claims that Ordinance No. 76 is inconsistent with the stated goals of public health and safety because it allows wells drilled and functional prior to the enactment of Ordinance No. 76 to

remain operational where those wells serve only single families.  Plaintiff argues that if the motivation behind the Ordinance was truly health and safety (based on Flint Hill's belief that a public water system was safer than well water), there would be no exemption for pre-existent wells. Plaintiff further claims that Flint Hill has admitted that the motivation behind the ordinances was economic, and not public health and safety.

### B.    SUBSTANTIVE DUE PROCESS.

Plaintiff challenges Ordinance No. 76 on the grounds that it violates substantive due process, both on its face and as-applied.  "The starting point for the analysis of a due process claim, whether substantive due process or procedural due process, is an examination of the constitutional interest which allegedly has been violated."  Wintercreek Apartments of St. Peters v. City of St. Peters, 682 F.Supp. 989, 994 (E.D. Mo. 1988).

### 1.    CONSTITUTIONAL INTEREST.

Ordinance No. 76, by its terms, restricts the Plaintiff's ability to use his land in the way that he wants.  Because the Plaintiff waited to attempt to dig a well and connect his home to the well for water until after the public water system was completed and Ordinance No. 76 became effective, he is prohibited by the terms of the Ordinance from obtaining his water from any other source than the public system.  Plaintiff argues this violates substantive due process inasmuch as it interferes with his right to sole and exclusive use of his property.  See Hendler v. United States, 952 F.2d 1364, 1374-75 (Fed. Cir. 1991) ("In the bundle of rights we call property, one of the most valued is the right to sole and exclusive possession – the right to exclude strangers, or for that matter friends, but especially the government.").  However, because Hendler analyzed this right in terms of the Fifth Amendment's prohibition on takings, it sheds little light on the nature of the Plaintiff's

-10-

constitutional interest which the Court must discern in its due process analysis.

Within the category of fundamental rights are such freedoms as the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.  Washington v. Glucksberg, 521 U.S. 702, 722 (1997).[8]  But, it is with great reluctance that the Court would see fit to "expand the concept of substantive due process because guidepost for responsible decisionmaking in this unchartered area are scarce and open-ended."  Id. (quoting Collins v. Harker Heights, 503 U.S. 115, 125 (1992)).  Noticeably missing from the list of fundamental rights is the right to sole and exclusive possession of one's property.

The reason it is so important to determine the nature of the constitutional interest involved is that the interest determines the standard of review.  "[A] challenged state action [must] implicate a fundamental right . . . before requiring more than a reasonable relation to a legitimate state interest to justify the action . . . ."  Glucksberg, 521 U.S. at 722.  In other words, if a fundamental right is not implicated, the Court must review the legislative action under the rational basis standard of review.  Plaintiff appears to acknowledge as much when he argues that Ordinance No. 76 lacks a rational basis. See Plaintiff's Memorandum in Opposition at 5.

        2.     STANDARD OF REVIEW.

As stated previously, Plaintiff has challenged Ordinance No. 76 both facially and as-applied, claiming that it violates his rights under substantive due process.  An ordinance is unconstitutional on its face in the context of substantive due process only if "it is arbitrary,

---

[8]The Court also stated that it has assumed the right to refuse unwanted lifesaving medical treatment is also a fundamental right.  Glucksberg, 521 U.S. at 720.

capricious and not rationally related to a legitimate government purpose." WMX Technologies, Inc. v. Gasconade County, Missouri, 105 F.3d 1195, 1198-99 (8th Cir. 1997) (citing Pennell v. City of San Jose, 485 U.S. 1, 11 (1988) (a land use ordinance is unconstitutional under the Due Process Clause only if it is "arbitrary, discriminatory or demonstrably irrelevant to the policy the legislature is free to adopt")). The standard of review for an as-applied substantive due process challenge is the same, although the analysis is somewhat different. See Chesterfield Development Corp., 963 F.2d at 1104.

The Eighth Circuit Court of Appeals described in WMX Technologies the difference between a facial substantive due process challenge to a land use ordinance and an "as applied" challenge:

> A "facial" substantive due process challenge to a land use ordinance . . . [occurs] when . . . he or she argues that any application of the ordinance is unconstitutional. He or she must show that, on its face, the ordinance is arbitrary, capricious, and not rationally related to a legitimate government interest. When one makes an "as applied" challenge, he or she is attacking only the decision that applied the ordinance to his or her property, not the ordinance in general. In this context, he or she must show that the government action complained of . . . is "truly irrational."

WMX Technologies, Inc., 105 F.3d at 1199, n. 1. "[S]ubstantive-due-process claims should be limited to 'truly irrational' government actions." Chesterfield Development Corp. v. City of Springfield, 963 F.2d 1102, 1104 (8th Cir. 1992). An example of a "truly irrational" government action is one where an ordinance is applied "only to persons whose names begin with a letter in the first half of the alphabet." Id.

3.   PLAINTIFF'S FACIAL CHALLENGE TO ORDINANCE NO. 76.

Plaintiff's facial due process challenge must fail because he has failed to show that all applications of Ordinance No. 76 would be unconstitutional. Plaintiff's argument that health and

-12-

public safety, the reasons given by Flint Hill for the enaction of Ordinance No. 76, are not the real reasons behind the statute, is unavailing.  The Eighth Circuit has addressed a claim, brought under substantive due process, that an ordinance was enacted for a reason different than the one given for the ordinance.  "The appellant's question whether the city's proffered rationale is the real reason the city passed the Ordinance.  As long as a rational basis exists, however, it need not be the real reason for the governmental action to satisfy substantive due process."  See Scott v. City of Sioux City, Iowa, 736 F.2d 1207, 1216 n. 11 (8th Cir. 1984).

Furthermore, an ordinance will survive a substantive due process challenge if it was "designed to accomplish an objective within the government's police power, and if a rational relationship existed between the provisions and purposes of the ordinances."  Id. at 1216.  First of all, Under §91.010 RSMo (1994), Flint Hill was given authority to "erect, maintain and operate waterworks, or to acquire waterworks by purchase and to operate and maintain the same, and to supply inhabitants thereof with water."  This qualifies as an express authorization to Flint Hill to develop its public water system.  See City of Hamilton v. Public Water Supply Dist. #2 of Caldwell County, 849 S.W.2d 96, 102 (Mo. Ct. App. 1993).  "A proper water supply nevertheless is the commodity most essential to the health and welfare of a population and so engages the paramount police power of the state."  Id.  Secondly, Ordinance No. 76 is rationally related to a legitimate government purpose.  The stated purpose for the Ordinance was that a public water system was in the interest of the public's health and safety.  There can be little doubt that this is true.  See City of Hamilton, 849 S.W.2d at 102; see also Stern v. Halligan, 158 F.3d 729, 731-32 (3rd Cir. 1998) (detailing the long list of reasons private wells can be dangerous, and that protecting the health, safety and general welfare of township inhabitants is plainly in the public interest).  The Stern court

-13-

went on to state that "these potential harms [associated with wells] provide ample justification for government action to safeguard citizens. Because pure water is a precondition for human health, regulating the water supply is a basic and legitimate government activity." Stern, 158 F.3d at 732. The Stern court concluded:

> A municipal water supply replaces the myriad of private water sources that may be unmonitored or, at best, difficult, expensive and inefficient to monitor. Therefore, a legislature may rationally conclude that a public water supply is the simplest and safest solution for its citizenry as a whole without proof of danger to each and every affected person. The danger is significant, the burden of connecting to nearby waterlines is not great, and the costs and benefits of such legislation are widely shared throughout the area of service. For these reasons, the overwhelming majority of courts that have addressed the issue have found that mandatory connection to public water is a legitimate exercise of police power.

Id. Even the 100 foot boundary requirement (requiring persons and entities whose property lines are within 100 feet of the public water system to connect to the system) is rationally related to a legitimate state purpose. The limit was set because it ensured both a healthy water supply for most Flint Hill residents and sufficient money to construct and operate the system. Therefore, because Ordinance No. 76 is rationally related to a legitimate purpose, Plaintiff's facial substantive due process challenge fails.

### 4.   PLAINTIFF'S AS-APPLIED CHALLENGE TO ORDINANCE NO. 76.

Plaintiff complains that Flint Hill violated his rights under substantive due process when it applied Ordinance No. 76 to him so that he was prevented from drilling a well on his property and connecting his home to the well for water. Plaintiff must show that the government's action was truly irrational in order to prevail on his as-applied substantive due process challenge.

Ordinance No. 76, by its plain terms, contemplates that a landowner might drill a well after

-14-

the Ordinance went into effect. Number 5 of Section No. 1 in Ordinance No. 76 states that "[a]ny residence which is served by a well which well is constructed or put in use after construction of said public water system" must tap into the public water system. Given this language, it appears that Flint Hill did not have authority under Ordinance No. 76 to prevent Plaintiff from drilling a well on his property after the effective date of the Ordinance. However, Flint Hill was plainly authorized under the Ordinance to prevent Plaintiff from connecting his home to the well for his water supply. The question before the Court, therefore, is whether Plaintiff's substantive due process rights were violated when Flint Hill, ostensibly under the authority it believed it had under Ordinance No. 76, acted to prevent Plaintiff from digging a well on his land.

Substantive due process "is reserved for a narrow class of cases, usually involving some egregiously unfair or shocking act of governmental oppression." Steuart v. Suskie, 867 F.2d 1148, 1148 (8th Cir. 1989). An ordinance will be found to violate substantive due process only if it is truly irrational. Chesterfield Development Corp., 963 F.2d at 1104. In Steuart, the Plaintiff claimed the Department of Housing and Urban Development ("HUD") deprived him of a "certain status" in violation of HUD's own personnel procedures. Steuart, 867 F.2d at 1149. The Court of Appeals stated that "[i]f such a claim raises substantive due process concerns, every claim by a citizen that any government has violated a statute, regulation or procedure, in such a way as adversely to affect "liberty" or "property", would create a constitutional lawsuit. The heavy artillery of constitutional litigation is not available on such an indiscriminate basis." Id.

This hesitancy to bring the "heavy artillery" of constitutional litigation to bear on an indiscriminate basis applies with equal force to Plaintiff's claims under substantive due process. Plaintiff has not shown, and has not claimed, that Flint Hill's actions violated his fundamental

-15-

rights.  His claim, boiled down to its essence, is that Flint Hill acted irrationally when it prohibited

him from drilling a well on his property.  The fact that Flint Hill applied Ordinance No. 76 to him

in such a manner as to prohibit him from drilling a well on his property was not irrational.  On the

contrary, it was an act calculated to enforce the terms of the Ordinance (e.g. to prohibit him from

connecting his house to the well for water).  As the Eighth Circuit Court of Appeals has stated, an

example of a truly irrational action by the government would be the application of an ordinance

"only to persons whose names begin with a letter in the first half of the alphabet."  Chesterfield

Development Corp., 963 F.2d at 1104.[9]  Therefore, Plaintiff's as-applied challenge to the

Ordinance must fail.

### C.    EQUAL PROTECTION.

The first step in analyzing whether an Ordinance or law violates equal protection is to

determine the standard of review.  Von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 377

(8th Cir. 1997).  In this case, the appropriate standard of review is that of rational basis, a standard

which requires the Court to determine if the Ordinance is rationally related to a legitimate

---

[9]Furthermore, it is not clear that the application of Ordinance No. 76 to the Plaintiff is the
true cause of the harm which he allegedly suffered.  Ordinance No. 76 required Plaintiff to connect
to the public water system as the exclusive water source based on the position of his property lines
relative to the water system, and because he had no pre-existing well on his property.  Again, it is
not clear that Ordinance No. 76 prohibited Plaintiff from drilling a well on his property for
purposes unrelated to supply his home with water.  Therefore, if Flint Hill acted in excess of its
authority under state law in prohibiting Plaintiff from drilling a well, then Plaintiff may have
recourse under state law.  However, the fact that Flint Hill may have violated state law in
prohibiting Plaintiff from drilling a well on his property does not mean Flint Hill acted irrationally
in violation of substantive due process.  A state-law error, "no matter how fundamental, cannot in
and of itself create a federal due-process violation. . . .  '[T]he theory of substantive due process is
properly reserved for truly egregious and extraordinary cases . . . .'" Chesterfield Development
Corp., 963 F.2d at 1105 (quoting Myers v. Scott County, 868 F.2d 1017, 1019 (8th Cir. 1989).

government purpose.[10] Id. "Governments 'may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational.'" Khodara Environmental, Inc. v. Beckman, 91 F.Supp.2d 827, 853 (W.D. Pa. 1999) (involving, among others, an equal protection challenge to a federal statute which prohibited construction of a landfill) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 446 (1985)). Equal protection cases require this Court to compare "those persons subject to the classification and those persons who are similarly situated but for the classification." Khodara Environmental, Inc., 91 F.Supp.2d at 853 (quoting Maldonado v. Houstoun, 157 F.3d 179, 187 (3rd Cir. 1998)). According to Plaintiff, he is being discriminated against, and his equal protection rights violated, because "[t]he ordinances are irrational in that they designate adjacent parcels of land differently and can create a patchwork of differing 'zoning' requirements (i.e., allowing one landowner to have a water well while his neighbor may be prevented from drilling for a well)." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 8. Plaintiff argues that if "the issues of health and safety were the dominant issues as argued in Defendant's brief, it is difficult to understand why Defendant allows certain residents to have a well simply based on when such well was constructed." Id. at 9. Plaintiff concludes his argument by stating that the Ordinance is not rationally related to its alleged purpose because it is "akin to the City of Times Beach requiring that the entire town be condemned based on dioxin poisoning, but allowing certain residents the right to remain in Times Beach because their grandfathers resided within the city limits." Id. at 10.

Flint Hill is right to point out language in Khodara where the district court stated it could

---

[10]In this case, Plaintiff has made no argument that he is a member of a suspect class or quasi-suspect class such that his equal protection claim would be reviewed applying the strict scrutiny test.

conceive of a rational purpose, unrelated to the main purpose behind the statute, "for regulating only proposed landfills and excluding already active ones from the statute's scope." Khodara Environmental, Inc., 91 F.Supp.2d at 852. That rational purpose could be to protect the interest property owners had in pre-existent landfills. Id. The same rationale applies with equal force here. While it is true that health and safety were stated goals behind the enactment of Ordinance No. 76, the citizens of Flint Hill expressed concern in the surveys taken by Flint Hill at having to bear the expense of their wells and then having to bear the additional expenses related to the public water system. See Defendant's Statement of Undisputed Facts ¶ 9. The exemption in the statute was therefore rationally related to a legitimate end – protecting the interests of citizens of Flint Hill in their pre-existing wells used by single families. See Dandridge v. Williams, 397 U.S. 471, 485 (1970) (" . . . a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'") (quoting Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 78 (1911)). Furthermore, "a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. A state, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification." Heller v. Doe, 509 U.S. 312, 320 (1993). Here, Flint Hill has given a rational basis for the classification – it did not believe the small number of pre-existing wells would compromise its stated purpose behind requiring connection to the public water system. See Defendant's Memorandum of Law in Support of Motion for Summary Judgment at 21. Accordingly, given that there exists a reasonably conceivable state of facts which provide a rational

basis for the classification (i.e., the small number of pre-existing wells and the fact that most residents would be served by the water system), Plaintiff's equal protection challenge must fail.

In addition, Ordinance No. 76 does not create "spot" zoning.  See Ewing v. City of Springfield, 449 S.W.2d 681, 689 (Mo. Ct. App. 1970).  "Spot" zoning occurs when land is placed in a zoning category more restrictive then similarly situated neighbors.  Id.  Plaintiff has not shown that he has been treated differently than similarly situated neighbors.  In fact, there has been no showing that any neighbors are similarly situated to Plaintiff.  Plaintiff's Equal Protection claim therefore fails.

### D.    "TAKINGS" CLAIM UNDER FIFTH AMENDMENT.

The key issue before the Court, prior to adjudicating the substance of Plaintiff's Fifth Amendment claims, is jurisdictional.  Under Von Kerssenbrock, the "general rule is that a plaintiff must seek compensation through state procedures before filing a federal takings claim against a state."  Von Kerssenbrock, 21 F.3d at 379.  The rationale behind this rule is that it cannot be said for certain that Plaintiff has suffered a taking under the Fifth Amendment "until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the state."  Id.  Because Missouri law provides for a property owner to seek compensation through an inverse condemnation action, Plaintiff must first seek redress under the State of Missouri's procedures for compensation.[11]  See Mo. Rev. Stat. Art I., § 26; see also Tierney v. Planned Indus. Expansion Auth. of Kansas City, 742 S.W.2d 146, 155 (Mo. 1987); see also Zumalt v. Boone County, 921 S.W.2d 12, 15 (Mo. Ct. App. 1996).  Therefore, this Court must dismiss Plaintiff's

---

[11]The Court notes that Plaintiff failed to address the jurisdictional issue in its Memorandum in Opposition.

-19-

Fifth Amendment claim for lack of jurisdiction.

     **E.**    **CONCLUSION.**

Because Plaintiff has failed to show any entitlement to relief, this Court need not address

the punitive damages issue. It is clear that under the rational basis standard of review, Plaintiff has

failed to show his rights under the Due Process or Equal Protection Clauses were violated. Plaintiff

has also failed to show that this Court has jurisdiction of his Fifth Amendment claim.

     Accordingly,

     **IT IS HEREBY ORDERED** that Defendant City of Flint Hill's Motion for Summary

Judgment [document #20] is **GRANTED**.

     Dated this _21²_ Day of December, 2000.

 

                                     E. RICHARD WEBBER
                                     UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT -- EASTERN MISSOURI
INTERNAL RECORD KEEPING


AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 12/21/00 by mberg
                    4:99cv1479     Braungardt vs Flint Hill, MO

42:1983 Civil Rights Act

Daniel Card -  2780                Fax: 314-727-2101
Craig Concannon -  83860          Fax: 314-421-0465
Richard Cooper -  2869            Fax: 314-579-2442
D. Henson -  32340                Fax: 314-727-2101

SCANNED & FAXED BY:

DEC 2 1 2000

MJM